GLADNEY, Judge.
Ed Tullos, or Louis Ed Tullos, as sometimes called, appeals suspensively from a judgment decreeing ownership and delivery of a certain Dodge truck in favor of *213 Louis Tullos, appellant’s father. Louis Tullos obtained a writ of sequestration and had the truck seized after which the defendant Ed Tullos, bonded the writ on a forthcoming bond and was in possession of the truck when the appeal was granted.
In his petition Lou-is Tullos alleged that he purchased the truck from the H. G. Williams Motor Company of Tullos, Louisiana, for the sum of $1,600, of which amount $1,200 was paid by his personal check, and, that in addition to the check, a second-hand Ford truck was traded in at a value of $400. Plaintiff further averred that he loaned the truck to his son who at the time of trial had the truck in his possession and refused to return it.
Ed Tullos claims ownership of the vehicle by reason of having purchased it.from the H. G. Williams Motor Company and sought to establish his case through the bill of sale of the truck and evidence of payment of certain repair bills, insurance and licenses for the same.
In the trial court defendant filed the following exceptions which he styled: Exception of improper form of action; exception of no right of action; exception of no cause of action, and a plea of estoppel. After consideration the court a quo overruled all of the exceptions. They are not urged on appeal and we shall consider the exceptions and plea of estoppel as without merit.
Our learned brother below has correctly stated the sole issue in the case, one of fact, and thoroughly analyzed the testimony and evidence pertinent thereto, and we adopt as ours his views expressed as follows :
“The only issue to be determined on the merits of the case is whether or not the truck was purchased by plaintiff, Louis Tullos, or by his son, Ed Tullos.
“It seems that Louis Tullos signs his name L. Tullos, but is known throughout his acquaintance as Louis Tullos. Ed Tullos has the name of Louis E. Tullos, but is known and called by his acquaintances as Ed Tul-los. Therefore, among the friends and acquaintances of both plaintiff and defendant, Louis Tullos is referred to as the father of Ed Tullos, and Ed Tullos is known as the son of Louis Tullos.
“Ed Tullos received a physical injury while laboring in the State of Mississippi, and after that injury returned to Tullos, Louisiana, to the home of his father where he remained for more than a year, and during the time he was recuperating from his injury. After he was able to perform manual labor, his father assi§ted him in obtaining work in the Tullos oil field and perhaps other fields to attend the pumping stations of the wells and to repair and build rigs. Ed had no means of conveyance to carry him over the field and for about 12 months he used the private automobile of his father, Louis Tullos, for this purpose; and when his father saw the automobile was being damaged from the use, he repaired the truck which he traded in on the deal and turned it over to his son for use; but as the winter was approaching and the body of the truck was not in condition -to protect those who rode in it during the winter season, Ed prevailed on his father to get a new truck for that purpose, and finally the father, Louis Tullos, concluded to purchase the truck, and traded the second-hand truck that he had previously repaired for his son to use on the new Dodge truck at a value of $400 and gave his personal check in the amount of $1,200 in settlement of the truck purchased.
“After the question of settlement came up between plaintiff and defendant, plaintiff went to the H. Q. Williams Motor Company in Tullos and asked for a bill of sale on the truck which had been purchased prior thereto and the company gave him a bill of sale made out on October 28, 1949, to Louis Tullos, Tullos, Louisiana, describing the Dodge truck conveyed to Louis Tullos.
“It developed, however, after the suit was filed that at the time the deal was made a bill of sale for the truck was made out to Mr. Louis Tullos, Tullos, *214 Louisiana, showing that the Ford truck was accepted as the trade-in and that the Dodge ¾ ton pick-up was sold to Louis Tullos for the considerations therein stated. This bill of sale which was in the possession of Ed Tullos was not offered in evidence during the trial, but after the evidence had closed and case was being submitted by oral argument the question came up as to the original bill of sale not having been filed, and counsel representing defendant and the defendant asked to be permitted to confer about the filing of the bill, after which defendant’s counsel came in open court and asked permission to reopen the case in order to file the bill of sale which was granted and the bill of sale was at that time filed. The bill of sale is not made out to Louis E. Tullos but to Mr. Louis Tullos of Tullos, Louisiana. Neither is it made out to Ed Tullos.
“The check which was given as the cash payment on the Dodge truck was payable to the order of H. G. Williams Motor Company and states that it is given for ‘¾ ton Dodge truck in full payment.’ This check is signed by L. Tullos and endorsed by H. G. Williams Motor Company.
“Nowhere in the bill of sale nor on the check does it appear that Ed Tul-los or Louis E. Tullos had any connection whatever with the purchase of the Dodge truck.
"H. G. Williams as a witness testified that he understood although Louis Tullos was not present at the time that Louis Tullos was making the purchase and the record bears out this understanding.
“Louis Tullos on the stand as a witness testified that he purchased the truck to assist his boy as much as possible, but that the ownership of the truck belonged to him and that he used ■the truck and kept it in his possession as owner except the times he let his son, Ed, have the use of the truck; that Ed Tullos had never paid anything on the $1,200 which Louis Tullos paid on the truck or anything on the secondhand Ford truck that was traded in as a part payment. Of course, this is denied by Ed Tullos, and he offered some statements of account to show that he paid for some repairs on the truck, bought the licenses for the truck, paid for the insurance on it and maybe some other small claims while he was using the truck. This fact is not denied by Louis Tullos, but he stated that he gave him the money to buy the licenses for the truck and assisted him in whatever way he could to finance his operations, and that any money that was paid to him was not paid on the truck but on money which he advanced to his son to enable him to carry on the business he was in.
“Before the suit was filed Louis Tul-los wrote his son a letter which is filed in the record and in which it is contended by defendant that Louis Tullos was not claiming the Dodge truck but was asking for a settlement to the amount of $1,700 which Ed owed him. The letter speaks for itself and in addition Louis Tullos testified that he was willing to accept the amount of $1,200 for the truck and $500 in addition that he had advanced Ed in full settlement of their differences but that Ed was not the owner of the truck for it had never been sold to him.
“Considering the sharp differences between Ed Tullos and his father, Louis Tullos, and the documents offered in evidence to support the testimony of either one or the other, the court is convinced that the sale of the Dodge truck was made by the motor company to Louis Tullos and that Louis Tullos at no time resold the truck to Ed Tullos, and, hence, the truck now belongs to Louis Tullos, and that will be the judgment of the court.
“Therefore, it is decreed that Louis Tullos be recognized as owner of the Dodge ¾ ton pick-up standard cab truck and that the Sheriff be authorized to receive from Ed Tullos said truck and deliver it to Louis Tullos, and that all costs of this suit be paid by Ed Tullos.”
The judgment appealed from is, therefore, affirmed at appellant’s cost.